James M. BOYLE, et al., Plaintiffs,

v.

CITY OF LIBERTY, MO,
et al., Defendants.

No. 92–0807–CV–W–6.

United States District Court,
W.D. Missouri, W.D.

Oct. 6, 1993.

William H. Pickett, Kansas City, MO, for James R. Boyle, Eula May Boyle, Cecil Gordon, Juanita Faye Gordon.

Gardiner B. Davis, Spencer, Fane, Britt & Browne, Michael E. Waldeck, Niewald, Waldeck & Brown, P.C., Robert O. Jester, Ensz & Jester, Kansas City, MO, James M. Yeretsky, Niewald, Waldeck & Brown, Overland Park, KS, for City of Liberty, Mo.

Steven F. Coronado, David S. Baker, Sherman, Taff & Bangert, P.C., Kansas City, MO, for Lewis J. Henderson.

Steven F. Coronado, David S. Baker, Sherman, Taff & Bangert, P.C., Gardiner B. Davis, Spencer, Fane, Britt & Browne, Kansas City, MO, for Curtis W. Mansell.

Don A. Witt, Witt & Hicklin, P.C., Platte City, MO, for James A. Houston, Jr.

Michael G. Norris, Payne & Jones, Chartered, Dirk L. Hubbard, Overland Park, KS, for City of Cameron, MO, D.R. Fritz.

Theodore A. Bruce, Missouri Atty. Gen., Jefferson City, MO, for Missouri State Highway Patrol, E.A. Tilfore.

Gardiner B. Davis, Spencer, Fane, Britt & Browne, Kansas City, MO, Theodore A. Bruce, Missouri Atty. Gen., Jefferson City, for G.D. Mason.

Michael J. Jerde, Morrison & Hecker, Kansas City, MO, Christopher D. Schneider, Morrison & Hecker, Kansas City, MO, for Clay County, MO, Michael L. Reilly.

Michael J. Jerde, Morrison & Hecker, Kansas City, MO, for Richard Roe, John Doe.

## MEMORANDUM AND ORDER

SACHS, Senior District Judge.

Before the court are the defendants' motions to dismiss.[1] This case arose from a high-speed car chase on the morning of September 13, 1990, when a minor child and an adult companion stole a car and drove past defendant Fritz (a Cameron police officer) on Interstate 35. The facts according to the plaintiffs' allegations are as follows: Fritz pursued the car and was joined at various times by defendants Mason and Tilford, Missouri Highway Patrol Officers, and defendants Doe[2] and Roe, Clay County Deputy Sheriffs (this opinion will collectively refer to these defendants as the "chase defendants"). The chase defendants at times drove at speeds exceeding 100 miles per hour and averaged 90 miles per hour. They unsuccessfully attempted to create a rolling roadblock, and at one point the car collided with and damaged a civilian vehicle. Around 6:15

1. The defendants filed separate motions to dismiss, but combined their suggestions in support into a filing entitled "Master" Suggestions in Support of Motions To Dismiss.

2. The defendants identified defendant "Doe" as Michael Reilly. Defendant Reilly filed a motion to dismiss that incorporated the "Master" Suggestions in Support of Motions to Dismiss.

a.m. defendants Henderson and Mansell, Liberty police officers (the court will refer to defendants Henderson and Mansell as "roadblock defendants"), learned of the chase and parked their vehicles on the east and west shoulders of Interstate 35. The plaintiffs allege that defendant Houston, a Liberty police officer, was the shift supervisor for the roadblock defendants. At the time, traffic was heavy and all defendants were aware that 7:00 a.m. was the time for a shift change at many businesses in Jackson and Clay Counties. The roadblock defendants turned on their emergency lights to slow the southbound traffic, then drove their cars onto Interstate 35, eventually blocking all southbound traffic. The roadblock caused a mile-long line of traffic in both lanes. As the chase defendants approached the line of traffic, they moved off to the shoulder. The stolen car drove between the two lines of traffic on Interstate 35 and collided with various cars, killing one civilian, causing substantial property damage and personal injury to others.

Plaintiffs James Boyle, Cecil Gordon, and the class of plaintiffs who were owners and/or passengers in non-law enforcement vehicles used by the defendants for the purpose of establishing and operating a roadblock on September 13, 1990, brought suit in the Circuit Court of Clay County, Missouri, for damages under 42 U.S.C. § 1983, for various state law tort claims, and for declaratory and injunctive relief. Two other plaintiffs, Eula May Boyle and Juanita Faye Gordon, brought claims for loss of consortium. The plaintiffs named as defendants the above mentioned police officers, (collectively the "individual defendants"), as well as the City of Liberty, City of Cameron, the Missouri State Highway Patrol, and Clay County (the "governmental defendants").

 In considering a motion to dismiss the court liberally construes the complaint in the light most favorable to the plaintiff. *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982). The court will draw all inferences which may be drawn from the facts alleged in

favor of the plaintiff. *Park View Heights Corp. v. Black Jack*, 467 F.2d 1208 (8th Cir. 1972). The court will not dismiss the complaint unless it appears that the plaintiff can prove no set of facts which would entitle him or her to relief. *Price v. Moody*, 677 F.2d 676, 677 (8th Cir.1982). The defendants challenge each of the plaintiffs' claims. The court will address each challenge in turn.

## I. INJUNCTIVE AND DECLARATORY RELIEF

The defendants argue that the court must dismiss the plaintiffs' claims for injunctive relief, because the court does not have jurisdiction to issue the injunctive relief. In Count XVIII of the petition, the plaintiffs seek injunctive relief in the form of an order that "permanently enjoin[s] all Defendants from using civilian operators, civilian vehicle passengers and/or civilian vehicles as part of a roadblock established by one or more law enforcement agencies, without the prior consent of every operator, passenger or owner." (Complaint p. 49). Count I of the petition similarly requests a "permanent injunction enjoining these Defendants from using civilian vehicles as part of a roadblock without the prior consent of the owners, operators and passengers of such vehicles." (Complaint p. 16). The defendants argue that the plaintiffs have not established the Constitutional jurisdictional requirement of a "case or controversy" because the plaintiffs lack standing to seek this injunctive relief. The defendants cite *Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983),[3] to support their contention that unless the plaintiffs show that they have sustained or are in immediate danger of sustaining some direct injury as a result of the challenged conduct, and that the injury is both real and immediate, not conjectural or hypothetical, the plaintiffs do not have standing to seek injunctive relief, and therefore no case or controversy exists.

 The plaintiffs' response appears to concede that if *Lyons* applies to this case, the plaintiffs do not have standing to request

---

**3.** While the *Lyons* case only addressed the prerequisites for seeking injunctive relief, the same principles apply with respect to plaintiffs' claims

for declaratory relief. *See Preston v. Gutierrez*, 1993 WL 280819, 1993 U.S.Dist.LEXIS 10339, n. 2 (W.D.Mo. July 23, 1993).

injunctive relief. However, the plaintiffs argue that the court should not apply *Lyons;* rather, because the injunction is based on Missouri law, the court should apply Missouri's requirements for injunctive relief, not federal requirements. Even if the court were to apply Missouri requirements the plaintiffs do not have standing to assert a claim for an injunction barring the use of "civilian vehicles as part of a roadblock without the prior consent of the owners, operators and passengers." Under Missouri law, injunctive relief does not lie unless the action threatened will result in irreparable injury absent the remedy, and there is an inadequate remedy at law. *Eberle v. State,* 779 S.W.2d 302 (Mo.App.1989). A plaintiff must base a claim for injunctive relief on real apprehension that future acts are not just threatened but in all probability will be committed. *A.B. Chance Co. v. Schmidt,* 719 S.W.2d 854 (Mo.App.1986). In this case the plaintiffs have not alleged that a threat exists, let alone a probability, that the plaintiffs will be subject to the complained of act in the future. In addition, it appears that an adequate remedy exists at law. The underlying suit for damages can determine the issue of the legality of the complained of acts. Accordingly, the plaintiffs lack standing to assert injunctive and declaratory relief and the court will dismiss the plaintiffs' claim for injunctive and declaratory relief in Counts I and XVIII.

## II. STATE LAW TORT CLAIMS

### A. Public Duty Doctrine

Under the public duty doctrine, public officers are not liable in tort for injuries or damages a particular individual sustains that results from a breach of the duty the officers owe to the general public. *Parker v. Sherman,* 456 S.W.2d 577 (Mo.1970); *Beaver v. Gosney,* 825 S.W.2d 870, 872 (Mo.App.1992). The focus of the public duty doctrine is the nature of the duty created, whether it is a duty to the general public or to the particular individuals. *Davies v. Karmeier,* No. 82–0042–CV–W–9, slip op. (W.D.Mo. Sept. 16, 1985).

The defendants argue that Missouri courts have held that "enforcement of the law and keeping of the peace are duties which a municipality and its employees owe to the general public but a breach of which is not actionable by a citizen." *Beaver,* 825 S.W.2d at 873; *Schutte v. Sitton,* 729 S.W.2d 208 (Mo.App.1987); *Berger v. University City,* 676 S.W.2d 39 (Mo.App.1984). The defendants note that the plaintiffs' complaint concedes that at all times during the incident at issue on September 13, 1990, the individual defendants were "engaged in the performance of a government function," while pursuing a stolen vehicle, and that the individual defendants created the roadblock "as a method of recovering the stolen vehicle." (Petition, Count I ¶¶ 17, 23–25, 41).

The plaintiffs argue that the individual defendants breached duties owed to them as individuals. The plaintiffs contend that the individual defendants breached specific duties created by Missouri statutes and law enforcement agency standards, policies and procedures. The plaintiffs specifically cite RSMo § 537.600, § 304.010 and RSMo § 304.022. The court will review each of these sources.

Section 537.600 waives sovereign immunity for negligent acts or omissions of public employees in the operation of motor vehicles within the course of their employment. The statute creates no duty running from the individual defendants to either the general public or to the plaintiffs individually. Sovereign immunity protects public entities, not public officials. The statute is irrelevant to the plaintiffs' claims against the individual defendants.

Section 304.022 provides some regulations for the operation of emergency vehicles. Specifically, plaintiffs cite the subsection allowing drivers of an emergency vehicle to exceed the prima facie speed limit only if the driver does not endanger life or property. Section 304.010 provides that every person operating a vehicle, including an emergency vehicle, shall exercise the highest degree of care. This case does not involve the "operation" of vehicles in the statutory sense. Moreover, these statutes do not create a duty to particular individuals as distinguished from the general public; therefore the duty

created is to the public, and not to individuals. *Nelson v. Freeman*, 537 F.Supp. 602, 611 (W.D.Mo.1982) *aff'd sub nom.*, *Nelson v. Missouri Division of Family Services*, 706 F.2d 276 (8th Cir.1983). The fact that the plaintiffs have alleged that the individual defendants' acts demonstrated reckless indifference or conscious disregard for the safety of the public is immaterial. If the defendants owe no duty to the plaintiffs in particular, the defendants' state of mind is irrelevant. *Berger*, 676 S.W.2d at 42.

 The plaintiffs have not set forth the specific law enforcement agency standards, policies and procedures, that create the specific duties plaintiffs claim the individual defendants breached. The court is doubtful that whatever specific law enforcement agency standards, policies and procedures the plaintiffs rely upon create duties owed to the particular plaintiffs. Missouri courts have held that the law enforcement agency standards, policies and procedures at issue in those cases created duties owed to the general public. *Beaver*, 825 S.W.2d at 873; *Spotts v. Kansas City*, 728 S.W.2d 242, 248 (Mo. App.1987). However, the court feels that to dismiss the claims that derive from duties created by the standards, policies and procedures, without the benefit of reviewing those specific standards, policies and procedures, would be premature.[4] Accordingly, the court rejects the plaintiffs' tort claims to the extent they rely upon duties created under RSMo § 537.600, § 304.010 and RSMo § 304.022, but does not dismiss the plaintiffs' claims to the extent they rely on specific law enforcement agency standards, policies and procedures.

### B. Official Immunity

 The official immunity doctrine is distinct but somewhat related to the public duty doctrine. *Green v. Denison*, 738 S.W.2d 861, 866 (Mo. banc. 1987); *Sanders*, 756 S.W.2d at 538. Under the official immunity doctrine, public officers acting within the scope of their authority are not liable for injuries arising from discretionary acts or omissions. However, public officers may be held liable for torts committed when acting in a ministerial capacity. *Kanagawa v. State*, 685 S.W.2d 831, 835 (Mo. banc 1985). The individual defendants contend that their acts with regard to the September 13, 1990, incident were discretionary, and therefore protected under Missouri's official immunity doctrine. An act is discretionary if,

> that act necessarily requires "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued."

*Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984) (quoting *Jackson v. Wilson*, 581 S.W.2d 39, 43 (Mo.App.1979)). *See also*, *State ex rel. Barthelette v. Sanders*, 756 S.W.2d 536 (Mo. banc 1988). An act is ministerial if the act is,

> of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.

*Rustici*, 673 S.W.2d at 769 (quoting *Jackson*, 581 S.W.2d at 43). The Missouri Supreme Court stated that,

> [w]hile the above definitions provide useful guidelines, in the final analysis, the decision as to whether a public official's acts are discretionary or ministerial must be determined by the facts of each particular case after weighing such factors as the nature of the official's duties, the extent to which the acts involved policy making or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity.

*Kanagawa*, 685 S.W.2d at 836. However, the official immunity doctrine does not provide absolute immunity for all public officials'

---

4. The plaintiffs set forth two other additional arguments. First, the plaintiffs argue that the Missouri legislature must have abrogated the public duty doctrine because otherwise § 304.-022 and § 537.600 are meaningless. Second, the plaintiffs imply that the court should recognize a "special duty" exception to the public duty doctrine. The Missouri Supreme Court recently considered and rejected both arguments. *Heins Implement Co. v. Missouri Highway & Transp. Comm'n.*, 859 S.W.2d 681 (Mo.1993).

discretionary acts, or acts involving a duty to the general public. In *Green,* the court carved an exception to the official immunity doctrine stating that,

> [w]e agree that public officials may be expected to keep their wits about them, and must not assume an attitude of arrogant disregard toward the safety of members of the public. In the present case, however, the breaches of duty assigned are part and parcel of the officers' judgmental decisions.

At least one Eighth Circuit judge has noted that Missouri has created an "arrogant disregard" exception to the official immunity doctrine. *See Murray v. Leyshock,* 915 F.2d 1196, 1205 (8th Cir.1990) (Bright, J., dissenting).

 The court will not dismiss the plaintiffs' claims on the basis of the official immunity doctrine. The court is doubtful that the plaintiffs can establish any facts showing that the individual defendants' actions were ministerial. However, the plaintiffs have made sufficient allegations and pled sufficient facts to draw an inference that the individual defendants showed an arrogant disregard toward the safety of members of the public. The plaintiffs have alleged that the individual defendants knew or should have known "that there was an inordinately high probability of injury to, or the death of, the civilians being used as human shields." (Complaint at Count I, ¶¶ 42–47). The plaintiffs cite the heavy traffic, the youth of the driver of the stolen car, the erratic behavior throughout the length of the 22 mile long chase, the speed of the chase at over 100 miles per hour, the occurrence of an accident during the course of the high speed chase prior to the accident at issue, and noncompliance with law enforcement agency standards, policies and procedures, to support their contention that the individual defendants "demonstrated a reckless indifference to the rights of [the plaintiffs], or alternatively, demonstrated a complete indifference to, or conscious disregard for, the safety of [the plaintiffs]." (Complaint at Count I, ¶ 56; Count VIII, ¶ 9; and Count XV, ¶ 9). If the plaintiffs prove these factual assertions, it is possible that those facts could create the inference of "arrogant disregard" and defeat the protection of official immunity.[5] Therefore, the court will not at this time dismiss the plaintiffs' tort claims against the individual defendants on the basis of official immunity.[6]

## C. Claims Against Defendant Houston

The plaintiffs allege that defendant Houston was aware of defendants Henderson and Mansell's actions and "in his capacity as a shift supervisor issued no orders to prevent the roadblock from coming into existence, or to re-open Interstate 35 to southbound traffic after the roadblock was created." (Complaint, Count I, ¶ 33). The Complaint contains no factual allegation that he had any role in the creation of, or was present at, the roadblock. However, the plaintiffs argue that the Complaint raises the reasonable inference that defendant Houston was at the site of the roadblock, or at least had the opportunity to order defendants Henderson and Mansell to move their cars and re-open Interstate 35. Defendant Houston argues

---

5. Of course the relevance of this discussion hinges on the plaintiffs' ability to establish that the individual defendants breached law enforcement standards, policies and procedures which created duties running specifically to the plaintiffs as opposed to the general public.

6. Neither the plaintiffs nor the defendants briefed the issue of an exception to the official immunity doctrine. The court in *Green* also raised the possibility that Missouri law may hold a public officer liable for persons injured in the performance of discretionary duties only if "willful wrong, malice or corruption" is shown. The court in *Green* found it unnecessary to decide the issue because the evidence provided no basis for finding of any degree of fault beyond ordinary negligence. *Id.* at 868. The court is doubtful that the plaintiffs will be able to avoid dismissal of all tort claims against the individual defendants under the public duty doctrine; therefore the court is doubtful of the necessity of a future discussion of the official immunity issue. However, should such a discussion become necessary, the parties should brief the issue of an exception under Missouri law to the official immunity doctrine.

The defendants argue that the court should dismiss the loss of consortium claims if the court dismisses the plaintiffs' other claims. Because the court will not dismiss the plaintiffs' state tort law claims at this time, the court will not dismiss the derivative claims for loss of consortium.

that no theory exists under which the plaintiffs would be entitled to recover against him and therefore, the court should dismiss him from the case.

 In Missouri, it does appear that a police supervisor is responsible for the acts of subordinates if the supervisor has "directed such acts to be done, or has personally cooperated in the offense." *Linkogel v. Baker Protective Services, Inc.,* 626 S.W.2d 380, 385 (Mo.App.1981) (quoting *Jordan v. Kelly,* 223 F.Supp. 731, 737 (W.D.Mo.1963)). In light of the plaintiffs' allegations, the court cannot say that the plaintiffs cannot prove any set of facts that would entitle them to relief against defendant Houston. Accordingly the court will not at this time dismiss the claims against defendant Houston.

### D. Respondeat Superior and Sovereign Immunity

The governmental defendants [7] argue that because the plaintiffs' claims against the governmental defendants are based solely on the doctrine of respondeat superior, and because the individual defendants are protected under the public duty doctrine and official immunity, the plaintiffs have no ground to recover against the employer governmental defendants. Further, because the individual defendants did not perform any negligent acts or omissions, § 537.600 does not waive sovereign immunity. Of course, since the court does not at this time dismiss the plaintiffs' claims against the individual defendants under either official immunity or public duty doctrine, the governmental defendants' arguments carry little weight. The court therefore denies the defendants' motion to dismiss the plaintiffs' tort claims against the govern-

mental defendants on the basis of sovereign immunity.

## III. CONSTITUTIONAL CLAIMS

The plaintiffs allege various constitutional violations as the basis for claims under 42 U.S.C. § 1983.[8] The plaintiffs' petition alleges that the individual defendants violated the plaintiffs' following constitutional rights: the right to be free from involuntary servitude under the Thirteenth Amendment; freedom of employment under the Due Process Clause of the Fifth and Fourteenth Amendments; the liberty interest in freedom of travel on the federal highway system; the liberty interest not to be imprisoned; the right to equal protection and due process under the law; unlawful seizure under the Fourth Amendment; and taking of the plaintiffs' vehicles without just compensation in violation of the Fifth and Fourteenth Amendments. The court will address each claim in turn.

### A. Thirteenth Amendment

The plaintiffs' claim that the individual defendants violated the plaintiffs' rights under the Thirteenth Amendment to be free of involuntary servitude when the individual defendants used the plaintiffs and their vehicles "as part of the roadblock and as part of the method of recovering the stolen vehicle," without the plaintiffs' consent. (Petition, Count I, ¶ 55(a); Count VIII ¶ 8(a); Count XV, ¶ 8(a)). The plaintiffs analogize to the plight of African slaves, stating that just as slaves had no choice in their own destiny, and were expendable, the plaintiffs had no choice in being part of the roadblock and were expendable. (Suggestions in Opposition, p. 28).

---

7. The only claim against the governmental defendants is vicarious liability for the alleged State law torts of the individual defendants. The plaintiffs do not allege vicarious liability for the alleged constitutional violations.

8. The defendant Missouri Highway Patrol disputes the plaintiffs' claim in their suggestions in opposition that they have not brought a federal claim against the Highway Patrol. The Highway Patrol points to three paragraphs under Count I which name it. Since Count I is the plaintiffs' § 1983 Count, the Highway Patrol concludes that the plaintiffs have leveled a § 1983 claim

against it. The court disagrees. A reasonable reading of Count I suggests that the paragraphs mentioning the Missouri Highway Patrol set up later counts in the petition and do not implicate the Highway Patrol in the § 1983 Count. Count I does not request any relief from the Highway Patrol, therefore the court agrees with the plaintiffs that no federal claim exists against the Highway Patrol.

In addition, the court notes that the plaintiffs' complaint alleges § 1983 claims against the individual defendants and not the governmental defendants.

■ Involuntary servitude incorporates two elements: first, the use of force or legal coercion; and second, no option to work elsewhere. *Watson v. Graves,* 909 F.2d 1549 (5th Cir.1990). The defendants argue that the plaintiffs have not alleged that any plaintiff had no option to work elsewhere, therefore the plaintiffs have failed to state a cause of action.

■ The Thirteenth Amendment's primary purpose was to abolish the institution of African slavery as it existed at the time of the Civil War. It also was intended to "cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." *United States v. Kozminski,* 487 U.S. 931, 942, 108 S.Ct. 2751, 2759, 101 L.Ed.2d 788 (1988). However, the Thirteenth Amendment does not prevent the government from compelling citizens to perform certain civic duties. *Kozminski,* at 942, 108 S.Ct. at 2760. *See also Heflin v. Sanford,* 142 F.2d 798 (5th Cir.1944) (the Thirteenth Amendment not intended to limit the government's right to exact public service to meet the public need). There are certain servitudes which are excepted from the Thirteenth Amendment because the public need involved justifies special circumstances. *Bobilin v. Board of Education,* 403 F.Supp. 1095, 1103 (D.Haw.1975). Courts have held that forcing citizens to assist police enforce the law is one special circumstance. *St. Louis v. Liberman,* 547 S.W.2d 452 (Mo. banc.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 116, 54 L.Ed.2d 92 (1977); *Williams v. State,* 253 Ark. 973, 490 S.W.2d 117 (1973).

In *Williams* the court upheld an Arkansas law requiring individuals to assist police, when requested, in enforcing the law. In that case the policeman was attempting to serve someone with process and requested the defendant to watch the back door of the person's house in case the person tried to avoid service. The defendant refused and the policeman arrested him. Rejecting the defendant's Thirteenth Amendment argument, the court stated,

> Surely the responsibilities of a citizen in this republic have not been so diminished and diluted that such a theory can be viewed as having any substance whatever. We cannot see how the possible exposure to danger can be seriously advanced as indicative in involuntary servitude.

*Id.* at 122.

■ Forced participation in a roadblock to assist the police in apprehending a suspected criminal is not "akin to African slavery" tending to produce like undesirable results. Roadblocks are a reasonable exercise of the police power of the state to keep the peace and enforce the law. Public assistance is critical to achieving these goals. The purpose of utilizing citizen assistance in a roadblock is for the benefit of society in general. The public necessity of, and interest in, law enforcement justifies compelling civilian assistance in a roadblock to apprehend a fleeing criminal suspect. This is not to say that the loss of life and property on September 13, 1990, was not tragic. However, the Thirteenth Amendment provides no relief for the plaintiffs. It simply does not apply to any facts the plaintiffs could prove in this case.

### B. Freedom Of Employment

The plaintiffs Boyle, Gordon and plaintiff class claim that the individual defendants violated their right to freedom of employment, "a liberty interest protected under the Due Process Clauses of the Fifth and Fourteenth Amendments," by forcing them to act as agents, servants or employees of the defendant government entities, without the plaintiffs' permission. (Petition, Count I, ¶ 55(b); Count VIII ¶ 8(b); Count XV, ¶ 8(b)). The defendants argue that if the plaintiffs are alleging a substantive due process claim, the allegation is simply a repackaging of the Thirteenth Amendment claim and consequently the court should dismiss it. If the plaintiffs are alleging a procedural due process claim, then the court should dismiss the claims because the availability of state tort claims satisfies the Due Process Clauses. In any case, the defendants argue the court should dismiss the Fifth Amendment claim as the Fifth Amendment protects against actions of the federal government, and the plaintiffs have not sued any federal government defendant. The plaintiffs did not re-

spond to this portion of the motion to dismiss.

■ The Fifth Amendment protects against federal government invasion of civil liberties. *Feldman v. United States,* 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408 (1944). The Due Process Clause of the Fifth Amendment does not limit actions of state officials. *Huffaker v. Bucks County Dist. Attorney's Office,* 758 F.Supp. 287 (E.D.Pa.1991). The plaintiff has not sued any federal entity or official. Accordingly, the court will dismiss the plaintiffs' Fifth Amendment claims.

■ Viewing the plaintiffs' claim for breach of the right to freedom of employment in light of the petition's factual allegations, it appears the plaintiffs are restyling their Thirteenth Amendment claims in terms of a liberty interest under the Fourteenth Amendment. The court will dismiss the claims for the same reason the court dismissed the Thirteenth Amendment claims.

Even if the plaintiffs intend a more conventional "freedom of employment" claim, the plaintiffs have not pled sufficient facts to state a claim for breach of that right. In *Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972), the Court stated that the concept of liberty incorporates the right of the individual "to engage in any of the common occupations of life." The state would breach that right if the state made a charge against a person that would seriously damage that person's standing and association in the community, or imposed a stigma or other disability that foreclosed future employment. *Id.* at 573, 92 S.Ct. at 2707. The plaintiffs in this case do not allege that their standing and associations in the community are damaged or that they are foreclosed from future employment. Accordingly, the court will dismiss the plaintiffs' claims for breach of the right of freedom of employment.

## C. Freedom Of Travel On The Federal Highway System

■ The plaintiffs allege that the individual defendants violated the plaintiffs' freedom of travel on the federal highway system. This claim apparently does not include the right to intrastate travel, but refers solely to the right to interstate travel. (Plaintiffs's Suggestions in Opposition, p. 36). The defendants argue that the plaintiffs have not made the allegation that the defendants prohibited any plaintiff from traveling interstate. Even if the plaintiffs made such an allegation, the claim would be spurious under the facts of this case. The plaintiffs argue that given the geographical setting of the roadblock, the court should infer that at least one of the plaintiffs was engaged in interstate travel which the defendants unreasonably restricted.

Even if the court were to infer that the plaintiffs were engaged in interstate travel, the plaintiffs still can not prove that the defendants unreasonably restricted the plaintiffs' right to travel interstate. The Supreme Court has repeatedly recognized the right to interstate travel as a basic constitutional freedom. *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 254, 94 S.Ct. 1076, 1080, 39 L.Ed.2d 306 (1974). In *Shapiro v. Thompson,* 394 U.S. 618, 629, 89 S.Ct. 1322, 1328, 22 L.Ed.2d 600 (1969), the Court described the right, stating that,

> Our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement.

This right has been interpreted as "not necessarily movement, but the ability to migrate, resettle, and find a new job and start a new life." *Eldridge v. Bouchard,* 645 F.Supp. 749, 753 (W.D.Va.1986) *aff'd without op.,* 823 F.2d 546 (4th Cir.1987). The plaintiffs have not pointed to any statute, rule or regulation that prohibited the plaintiffs' right to interstate travel. The court doubts that a temporary roadblock implicates the right. However, even if it does, the defendants' compelling purpose justified the breach of the right. The plaintiffs' petition on its face indicates that the purpose of the roadblock was not to deter interstate travel, rather the purpose was to apprehend the driver of the stolen vehicle. This law enforcement purpose is a compelling reason, sufficient to justify the temporary restriction on interstate travel. The roadblock did not violate the right to

interstate travel anymore than if the police had pulled over one of the plaintiffs for a traffic violation. The court will dismiss the plaintiffs' claim that the defendants violated the plaintiffs' right to travel.

### D. Liberty Interest In The Right Not To Be Imprisoned

■ The plaintiffs' claim that the individual defendants violated their Fifth and Fourteenth Amendments by "effectively imprisoning [them] in [their] vehicle[s] as part of the roadblock and the effort to recover the stolen vehicle." (Petition, Count I, ¶ 55(d); Count VIII ¶ 8(d); Count XV, ¶ 8(d)). The defendants rely on *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979), for the proposition that "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." This is consistent with the Supreme Court's statement that constitutional protections are not a "font of tort law." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). The plaintiffs concede that the claim is fashioned in the same style as a state tort claim of false imprisonment. However, the plaintiffs impliedly distinguish *Baker* by arguing that the issue is not the false imprisonment itself, but the lack of any pre-imprisonment procedure.

To the extent the plaintiffs attempt to plead a substantive due process right not to be imprisoned, *Baker* controls, and the court dismisses the claim. However, to the extent the claim is a procedural due process claim, the court will dismiss the claim for the same reasons it dismisses the plaintiffs' other procedural due process claims. *See infra* § G.

### E. Right To Be Free From Bodily Harm

Plaintiffs Boyle and Gordon allege that the defendants violated the right to be free from bodily harm and consequently the Equal Protection and Due Process Clauses of the Fifth and Fourteenth Amendments by "negligently or intentionally placing [them] in a position where personal injury was not merely possible but inevitable." (Petition, Count I, ¶ 55(e); Count VIII ¶ 8(e)). The plaintiffs have not alleged that the defendants injured the plaintiffs directly. The plaintiffs have

alleged that the fleeing felon crashed his car into the plaintiffs Boyle and Gordon's cars. Given this background, the Court will address the equal protection and due process components of the claim separately.

### 1. Equal Protection

■ The defendants argue that the Equal Protection Clause reaches only dissimilar treatment; if the challenged action does not distinguish between two or more persons or groups, then the action does not deny equal protection. The defendants contend that plaintiffs Boyle and Gordon do not allege that they were singled out or treated dissimilarly from anyone else stopped at the roadblock. Therefore, the plaintiffs have failed to state a claim under the Equal Protection Clause. The plaintiffs did not respond to this argument.

The court agrees with the defendants. The plaintiffs Boyle and Gordon have failed to allege that the defendants directed the complained of action toward Boyle or Gordon as a member of a class or group singled out for discriminatory treatment. This court adopts the reasoning of Judge Merritt in *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir.1986), in which he writes,

> [t]he equal protection concept does not duplicate common law tort liability by conflating all persons not injured into a preferred class receiving better treatment than a plaintiff who alleges tortious injury.

Similarly in this case, absent any allegation that the defendants singled out Boyle or Gordon as members of a class or group for discriminatory treatment, the plaintiffs have no claim under the Equal Protection Clause simply because they were injured and others were not. The court will dismiss the plaintiffs' claims under the Equal Protection Clause.

### 2. Due Process

The defendants argue that the allegations of negligence are insufficient to state a claim under the Fourteenth Amendment. They contend that the Fourteenth Amendment does not afford protection for negligent or even grossly negligent acts. With regard to

the allegation of intentional acts, the defendants argue that this allegation is "artful" pleading designed to avoid dismissal for failure to state a claim. The defendants state that the alleged facts and plaintiffs' other allegations contained in the petition indicate that the true claim is one for negligence not intentional tort.

The court agrees with the defendants that merely negligent conduct does not amount to a deprivation under the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 330–331, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). Accordingly, to the extent the plaintiffs allege negligent deprivation of the right to be free from bodily harm under the Fourteenth Amendment Due Process Clause, the court will dismiss the allegation for failure to state a claim.

Although the plaintiffs did not respond to this argument, the court believes, on the basis of its own research, that the plaintiffs have stated a claim under the Due Process Clause of the Fourteenth Amendment. The Eighth Circuit has recognized that the state has a constitutional duty to protect individuals from third-party harm when the state affirmatively places those individuals in a position of danger the individual would not otherwise have been in. *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992); *Wells v. Walker*, 852 F.2d 368, 370 (8th Cir.1988). The plaintiffs have pled that the defendants intentionally placed Boyle and Gordon in a position where personal injury was not merely possible but inevitable. Taking this allegation as true, as the court must, the Complaint could support a finding that the state had a duty to protect the plaintiffs from danger. As the court noted earlier, the plaintiffs have pled that the individual defendants "demonstrated a reckless indifference to the rights of [the plaintiffs], or alternatively, demonstrated a complete indifference to or conscious disregard for, the safety of [the plaintiffs]." (Complaint at Count I, ¶ 56; Count VIII, ¶ 9; and Count XV, ¶ 9). The plaintiffs have adequately pled that the defendants had a duty to protect the plaintiffs and breached that duty. The scope of the

duty and the reasonableness of the conduct, including the extent of emergency and danger to others in the absence of the conduct complained of, remain to be developed and resolved by summary judgment or trial.[9]

### F. Fourth Amendment Unlawful Seizure

The plaintiffs claim that the individual defendants seized the plaintiffs' vehicles in violation of the Fourth Amendment by,

> using [them] as part of the roadblock and the effort to recover the stolen vehicle, without [their] consent, and without a warrant or other lawful authorization for seizure.

(Petition, Count I, ¶ 55(f); Count VIII ¶ 8(f); Count XV, ¶ 8(f)). The defendants argue that the court should dismiss this claim against the chase defendants because the plaintiffs have alleged nothing more than that the chase defendants were involved in a pursuit. The defendants argue that, "a pursuit 'does not rise to the level of a seizure under the fourth amendment.'" (Suggestions in Support, p. 38) (quoting *Roach v. Fredericktown*, 882 F.2d 294 (8th Cir.1989)). The defendants concede that the roadblock defendants did seize the plaintiffs; however, the defendants argue that the seizure was reasonable as a matter of law, and therefore not a violation of the Fourth Amendment. The court will address this argument with regard to each set of defendants separately.

#### 1. Chase Defendants

In the recently decided case, *Cole v. Bone*, 993 F.2d 1328 (8th Cir.1993), the court analyzed a claim of unreasonable seizure in the context of a police pursuit. In that case the police were involved in a high speed pursuit of a tractor-trailer. The highway patrolman who pursued the truck attempted in vain to stop the truck with a rolling roadblock. The patrolman then fired shots at the truck's wheels, flattening one tire, however, failing to stop the truck. The patrolman then attempted a stationary roadblock. The truck sped past the roadblock, and the troopers fired their shotguns at the truck's tires and radia-

---

**9.** It may well be that law enforcement activity, like military action, bears a very strong presump-

tion of regularity, when civilian second-guessing is involved.

tors. Finally, one of the patrolmen fired a shot at the driver, killing him. The plaintiffs, the decedent's wife and children, alleged a § 1983 claim for unlawful seizure against all the officers involved in the chase.

The court first identified the seizure, holding that the decedent was not seized until the patrolman's shot struck the decedent. The court held that the other patrolmen involved in the pursuit were properly dismissed, stating that "the pursuit in and of itself did not constitute a seizure, because it did not produce a stop." *Id.* at 1332–1333.

■ In this case, in order for the chase defendants to have seized the plaintiffs, the chase defendants must have asserted authority and the authority must have produced a stop. *Id.* at 1332. However, the chase defendants did not assert authority over the plaintiffs. The chase defendants asserted authority over the driver of the stolen vehicle. The plaintiffs did not respond to the chase defendants; rather, the plaintiffs stopped in response to the roadblock defendants' show of authority.[10] Accordingly, the court will dismiss the plaintiffs' § 1983 claim alleging unlawful seizure against the chase defendants.

### 2. *The Roadblock Defendants*

The parties agree that the defendants seized the plaintiffs. The only issue is whether the seizure was reasonable. The Supreme Court described the reasonableness inquiry as a balance of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1984). The reasonableness inquiry depends not only on the defendants' justification for a particular intrusion but also how the defendants carried out the intrusion. *Id.* The inquiry necessarily applies to the "totality of

the circumstances." *Id.* at 9, 105 S.Ct. at 1700. The court must focus first on the facts available to the roadblock defendants, a factual determination; and second, upon the reasonableness of the roadblock defendants' response, a legal determination. *Gilmere v. Atlanta,* 774 F.2d 1495, 1508 (11th Cir.1985), *cert. denied,* 476 U.S. 1124, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986) (Tjoflat, J., dissent).

■ The plaintiffs have alleged that the roadblock defendants deliberately stopped the southbound traffic on Interstate 35 with the intent to "use civilian vehicles and their drivers and/or passengers as a human shield or barricade as a method of recovering the stolen vehicle"; knowing that the fleeing suspect would not or could not stop in time to avoid a collision with the plaintiffs; and knowing that there was an inordinately high probability of injury to, or death of, the plaintiffs. (Petition, ¶¶ 41–43 at p. 10–11).

On these facts alone, it would appear that the plaintiffs Boyle and Gordon have stated a claim under the Fourth Amendment for seizure of their person. Their Fourth Amendment interest in bodily security was clearly significant. *Gilmere,* 774 F.2d at 1502. The governmental interest in law enforcement was also clearly significant and may counterbalance the individual interest in bodily integrity in some cases. *Id.* However, the police may not indiscriminantly sacrifice an innocent individual's right to bodily integrity under the rubric of law enforcement. The focus of the court's inquiry narrows with regard to the law enforcement purpose when the government places innocent third parties' bodily integrity at risk. The first step to determine whether the defendants' action was reasonable is to examine what facts the roadblock defendants had before them. The facts necessary for that determination in this case are not yet before the court, and await development during discovery. The determi-

---

10. This would be a different case if the chase defendants were chasing the plaintiffs, and the plaintiffs were stopped by a roadblock. Conceivably under those facts the chase defendants could have produced the stop of the plaintiffs' vehicles. In *Horta v. Sullivan,* 4 F.3d 2 (1st Cir.1993), the court found that the chase defendant in that case did not cause the stop of a fleeing suspect who

crashed into a roadblock. However, the court implied that under different circumstances, a court could find that a chase defendant seizes a fleeing suspect who is stopped by a roadblock. Since the driver of the stolen vehicle is not a plaintiff in this case, the court need not decide this issue.

nation of the issue at this point would be premature. The court cannot hold, as the defendants request, that the law enforcement purpose, by itself, outweighs an innocent third person's interest in bodily integrity for purposes of the Fourth Amendment analysis. Accordingly the court will deny the defendants' motion to dismiss Boyle and Gordon's claim for violation of their right to be free from unreasonable seizure under the Fourth Amendment.

Although the law enforcement purpose does not in and of itself outweigh an innocent third party's right to bodily integrity, the government's seizure of an innocent third party's property for a law enforcement purpose is reasonable as a matter of law. There is no question that police officers have the power to set up roadblocks in a reasonable manner for the apprehension of fleeing violators. At least one court has expressly recognized that a peace officer has the power to commandeer a motor vehicle for use as a roadblock in apprehending law violators. *Kagel v. Brugger,* 19 Wis.2d 1, 119 N.W.2d 394, 397 (1963). A respected commentator agrees, stating that,

> [i]t is not uncommon for the police to barricade a road with police cars or commandeered vehicles in order to stop a person who has fled from the police at such a high rate of speed that it would be impossible or highly dangerous to try and overtake him. Their authority to do so is unquestioned; it "is inherent in the power and the duties of law enforcement officers if those duties are to be effectively discharged." Consequently, it would seem clear that even if the presence of the barricade causes other vehicles to slow down substantially or even to stop for a brief

period of time, the practice is not constitutionally objectionable.

Wayne R. LaFave, 3 Search and Seizure, *A Treatise on the Fourth Amendment,* § 9.5(c) (1987) (quoting *Kagel,* 119 N.W.2d at 396). *See also, Jamieson v. Shaw,* 772 F.2d 1205, 1217 (5th Cir.1985) (Jolly, J., dissent). The plaintiffs allege that the roadblock defendants commandeered their vehicles, without their consent, to form a roadblock to apprehend the stolen car. The plaintiffs' Fourth Amendment interest, and the defendants' intrusion, was in the integrity of their cars. The governmental interest in law enforcement and keeping the peace has historically permitted police to commandeer vehicles for use as, or as part of, a roadblock despite a person's right to the integrity of their property. Such conduct as a matter of law does not offend the Fourth Amendment.[11] Therefore, the court will deny the plaintiffs' Fourth Amendment claim for unreasonable seizure of their property.[12]

### G. Procedural Due Process Claims

The plaintiffs have alleged that the defendants violated their right,

> under the Fifth and Fourteenth Amendments to be free from a taking of [their] property by the State, or any political subdivision thereof, without just compensation, by taking and using the civilian vehicles as part of the roadblock and the effort to recover the stolen vehicle, without the consent of the [plaintiffs], and without the payment of just compensation for such taking and use.

(Petition, Count I, ¶ 55(g); Count VIII ¶ 8(g); Count XV, ¶ 8(g)).[13] As noted above the plaintiffs have also alleged that the defendants seized the plaintiffs without due process of law. The defendants argue that

---

11. For example, the police certainly may form a roadblock to prohibit cars from moving on the highway while a presidential motorcade passes through an intersection. The governmental interest in national security would outweigh the individual's right to the use of their car. Similarly, the government's interest in law enforcement outweighs an individual's interest in the use of their car.

12. The above analysis is directed more toward Boyle and Gordon's claims in the integrity of their cars. However, certainly if Boyle and Gor-

don do not state a claim under the Fourth Amendment, the plaintiff class, whose members suffered no damage to their vehicles, has no claim under the Fourth Amendment.

13. The Fifth Amendment Takings Clause is made applicable to the states through the Fourteenth Amendment Due Process Clause. *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 244 n. 7, 104 S.Ct. 2321, 2331 n. 7, 81 L.Ed.2d 186 (1984).

these are essentially procedural due process claims which the court should dismiss pursuant to *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), because the plaintiffs' post-deprivation remedies satisfy the Due Process Clause. In response, the plaintiffs argue that no emergency existed to justify commandeering civilian vehicles to use as a roadblock, therefore the defendants were not justified in seizing the plaintiffs, or their vehicles, without a prior hearing. (Suggestions in Opposition, p. 33).

In *Parratt*, the Court recognized that the state satisfies due process if the necessity of quick action makes pre-deprivation process impractical, and the state provides adequate post-deprivation remedies. The Court reasoned that where a state employee acts randomly, and without authorization, to deprive a person of property, the state cannot predict when the loss will occur. *Id.* at 541, 101 S.Ct. at 1916. As long as the state provides an adequate post-deprivation remedy, the state satisfies due process.

In this case, the plaintiffs do not challenge the adequacy of the post-deprivation remedies, nor do the plaintiffs argue that the defendants could have afforded pre-deprivation process to them. Rather, the plaintiffs contend that the seizure itself was not justified.[14] Whether the seizure is justified has no relevance to the issue of adequate process. The procedural due process question is not whether the seizure was rational, reasonable, or justifiable, but whether the defendants seized the plaintiffs without sufficient process. Consistent with *Parratt* the court must look at two issues: first, whether the pre-deprivation hearing was impractical; and second, whether the post-deprivation remedies are adequate.

The petition on its face alleges that the defendants' acts were unauthorized.[15] The court is convinced that a roadblock as part of a pursuit of a fleeing suspect qualifies as random. Therefore, according to *Parratt*, the state could not have predicted when the loss would occur, making pre-deprivation process impossible.

The next question is whether state tort law provides a meaningful post-deprivation remedy. *Allen v. Kinloch*, 763 F.2d 335, 337 (8th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985). With regard to the takings clause claim, Missouri recognizes the tort of conversion, which the plaintiffs have alleged. *Couch v. Schoemehl*, 1989 U.S.Dist. LEXIS 18180 (E.D.Mo. March 7, 1989). Therefore the plaintiffs fail to state a claim for deprivation of property without due process of law under 42 U.S.C. § 1983 as the plaintiffs have an adequate state tort deprivation remedy. *Id.* With regard to the personal seizure claim, Missouri recognizes the tort of false imprisonment, which the plaintiffs have alleged. *Day v. Wells Fargo Guard Service Co.*, 711 S.W.2d 503 (Mo. 1986). Therefore, the plaintiffs fail to state a claim for personal seizure without due process of law under § 1983 as the plaintiffs have an adequate state tort deprivation remedy.[16]

14. The plaintiffs challenge the defendants' argument that because an emergency situation existed, the defendants had no opportunity to provide the plaintiffs with pre-deprivation process. The plaintiffs' rhetorical response is "what emergency." However, the plaintiffs do not suggest how the defendants could have afforded pre-deprivation process. They challenge the defendants' decision to set up the roadblock. (Suggestions in Opposition at 32). This is a proper question for a deprivation hearing, but has no relevance to the issue of whether the defendants could have practically afforded any pre-deprivation hearing to the plaintiffs.

15. The plaintiffs' allege in the petition that the defendants violated the,

standards, policies and procedures, written and unwritten, of their respective law enforce-

ment agencies and the governmental entities employing them, as well as the generally accepted standards, policies and procedures of law enforcement agencies, relating to the initiation, conduct and termination of [a high speed chase, and/or rolling roadblock and/or roadblock and/or relating to the use of civilians and/or civilian vehicles as part of a roadblock, with or without the consent of the civilian vehicle owners, drivers and/or passengers].
(Petition, Count IV, ¶¶ 2(k) and 3(*l*)).

16. As defendants correctly point out, and the plaintiffs do not contest, the fact that official immunity and public duty doctrines may bar these claims does not make the state tort law remedies inadequate in the Due Process analysis. *See Martinez v. California*, 444 U.S. 277, 282–83, 100 S.Ct. 553, 557–58, 62 L.Ed.2d 481 (1980); and *Rittenhouse v. De Kalb County*, 764 F.2d

## H. Qualified Immunity

The defendants next argue that should the court find that the plaintiffs have adequately stated any of their constitutional claims under § 1983, the court should still dismiss the claims because the defendants are entitled to qualified immunity.

Government officials who are sued for damages under § 1983 for their performance of discretionary functions are entitled to a qualified immunity defense if they prove that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Johnson v. Boreani*, 946 F.2d 67, 69 (8th Cir.1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). An accompanying issue is whether the plaintiffs have asserted a violation of a constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). In the case at hand, the court has held that the plaintiffs have stated a § 1983 claim against the roadblock defendants under the Fourth Amendment and against all defendants under the Fourteenth Amendment,[17] but dismissed the plaintiffs' other § 1983 claims. Accordingly the court need not address the applicability of qualified immunity to the plaintiffs' other § 1983 claims.

Framing the issue at this stage of the litigation in the light most favorable to the plaintiffs, the issue before the court is whether on September 13, 1990, the law was clearly established that stopping traffic on an interstate with the intent of creating a roadblock of civilians and their vehicles to stop a fleeing felon, knowing that there was an inordinately high probability of injury to or death of, the plaintiffs, violated the plaintiffs' Fourth Amendment and Fourteenth Amendment rights. The court has already ruled that in its opinion, this conduct could violate the Fourth Amendment. But now the question is whether the violation was clearly established in 1990.

On the Fourth Amendment issue, the plaintiffs' case and the roadblock defendants' defense of qualified immunity both turn on the same issue: the reasonableness of the roadblock defendants' conduct. *Keys v. Doxie*, 1993 WL 243359, 1993 U.S.Dist.LEXIS 8884 (N.D.Ill. June 30, 1993). Reasonableness is resolved by balancing the nature and quality of the intrusion on Fourth Amendment interests against the importance of the government interests alleged to justify the intrusion. *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1984). This issue requires "substantial factual development" before the court can determine whether the roadblock defendants' conduct violated the plaintiffs' Fourth Amendment rights and whether the defendants' actions were objectively reasonable in light of the clearly established legal rules in 1990. Accordingly, the court cannot, at this stage of the litigation, rule as a matter of law that the roadblock defendants are entitled to qualified immunity. *Goddard v. Urrea*, 847 F.2d 765, 768–769 (11th Cir.1988); *Vu v. Meese*, 755 F.Supp. 1375, 1382–1383 (E.D.La.1991); *LaVoie v. Town of Hudson*, 740 F.Supp. 88, 95 (D.N.H.1990).

In addition the court cannot say, at this point in the litigation that the individual defendants are entitled to qualified immunity from the plaintiffs' claims under the Fourteenth Amendment. The Eighth Circuit decided *Wells v. Walker*, 852 F.2d 368 (8th Cir.1988), two years prior to the events in this case. The factual situation in *Wells* is sufficiently analogous to the plaintiffs' allegations in this case such that the court cannot say at this stage of the litigation that a reasonable police officer would not have known he was violating the plaintiffs' Fourteenth Amendment rights. The claim of a Fourth Amendment violation by unreasonable seizure may be even more well settled in established law. Accordingly, the court cannot say that the individual defendants are entitled to qualified immunity at this point in

---

1451 (11th Cir.1985), *cert. denied*, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986).

**17.** The court has some difficulty conceiving a Fourteenth Amendment case against the chase

defendants, but briefing makes no distinction. Summary judgment motions may of course develop a distinction.

this case on the plaintiffs' § 1983 claim under the Fourteenth Amendment.[18]

### I. Claims Under § 1983 Against Defendant Houston

The defendants argue that the only claim the plaintiffs have alleged against defendant Houston is for vicarious liability for the actions of the roadblock defendants. The defendants contend that even if Houston is not entitled to qualified immunity, because "vicarious liability has no place in § 1983 lawsuits" (citing *Wilson v. Cross*, 845 F.2d 163, 165 (8th Cir.1988)), the court should dismiss the § 1983 claims against defendant Houston.

The court agrees with the defendants that to the extent the plaintiffs allege vicarious liability, the claims under § 1983 should be dismissed against the plaintiff. However, it appears that the plaintiffs also allege direct liability against defendant Houston. A supervisor is liable for the constitutional violations of his or her subordinates if the supervisor had knowledge that the subordinates caused deprivations of constitutional rights and the supervisor "demonstrated deliberate indifference or 'tacit authorization' of the offensive acts by failing to take steps to remedy them." *Sanders v. Brewer*, 972 F.2d 920, 923 (8th Cir.1992) (quoting *Pool v. Missouri Dep't. of Corrections & Human Resources*, 883 F.2d 640, 645 (8th Cir.1989)).

The plaintiffs allege that defendant Houston was aware of the roadblock defendants' actions and "issued no orders preventing the roadblock from coming into existence." (Complaint, Count I, ¶ 33). While the issue is close, the court believes that the plaintiffs have made factual allegations which raise the reasonable inference that defendant Houston "tacitly authorized" or was "deliberately indifferent" to the offensive acts. Again, based on the Complaint, the court questions whether the plaintiffs will be able to produce facts establishing defendant Houston's liability, however, the court cannot say that the plaintiffs can prove no set of facts. The remaining § 1983 claims against the roadblock defendants are under the Fourth and Fourteenth Amendment. Accordingly, at this

stage of the litigation, the court will not dismiss the plaintiffs' § 1983 claims under the Fourth and Fourteenth Amendment against defendant Houston.

### IV. ELEVENTH AMENDMENT IMMUNITY TO MISSOURI HIGHWAY PATROL

 Plaintiffs Boyle and Gordon allege that the Missouri Highway Patrol is vicariously liable for the acts of defendants Mason and Tilford. The plaintiff class includes the Highway Patrol in its declaratory judgment action. Count XVIII. Although the Eleventh Amendment does not bar claims for prospective declaratory relief, the court dismissed the plaintiffs' declaratory judgment claims because the plaintiffs do not have standing to assert declaratory claims. Boyle and Gordon concede that the Eleventh Amendment deprives this court of jurisdiction to consider their vicarious liability claims against the Highway Patrol. However, Gordon and Boyle argue that because they brought suit in state court, and the defendants, including the Highway Patrol, removed the case to federal court, the court should not dismiss this case with prejudice, or without prejudice, but rather the court should remand the entire case to the state court. The plaintiffs argue that if one claim is barred the court should remand the entire case.

The court agrees with the plaintiffs that dismissal is improper. The court also agrees with those cases holding that remand of barred claims only, and not the entire case, is appropriate. *Henry v. Metropolitan Sewer District*, 922 F.2d 332, 337–339 (6th Cir.1990) (reversing lower court dismissal without prejudice, holding remand of barred claims was the proper disposition of those claims); *Estate of Ritter v. University of Michigan*, 851 F.2d 846, 852 (6th Cir.1988) (remand of barred claims proper); *Texas Hospital Association v. National Heritage Insurance Co.*, 802 F.Supp. 1507 (W.D.Tex.1992) (remanding only those claims barred by Eleventh Amendment, rejecting the argument that if one claim is barred the court must bar all claims); *Mazur v. Hymas*, 678 F.Supp. 1473,

---

18. This ruling is subject to reconsideration at the summary judgment stage of the litigation.

1477 (D.Idaho 1988) (remanding case barred by Eleventh Amendment); *Keenan v. Washington Metropolitan Area Transit Authority,* 643 F.Supp. 324, 334 (D.D.C.1986) (remand rather than dismissal of cases barred by Eleventh Amendment, is proper). *But see McKay v. Boyd Construction Co.,* 769 F.2d 1084 (5th Cir.1985) (entire action, including non-barred claims must be remanded). The court adopts the reasoning of *Texas Hospital Association,* and recognizes that although judicial economy and convenience support remand of the entire case, comity and fairness support partial remand. 802 F.Supp. at 1517.

## V. CONCLUSION

Accordingly, the court DENIES the individual defendants' motions to dismiss the state law tort claims, as herein limited, and the government defendants' motions to dismiss the vicarious liability claims. The court GRANTS the individual defendants' motions to dismiss the § 1983 claims except the plaintiffs' claim against the roadblock defendants under the Fourth Amendment for an allegedly unreasonable seizure and the claim against all individual defendants under the Fourteenth Amendment for failure to protect the plaintiffs from bodily harm. The court further GRANTS the defendants' motions to dismiss the injunctive and declaratory relief claims. The court DENIES the defendant Highway Patrol's motion to dismiss. The court ORDERS the claims against the Highway Patrol REMANDED to the Circuit Court of Clay County, Missouri.

SO ORDERED.