William GREEN and Frances Clayton, Appellants,

v.

James DENISON, et al., Respondents.

No. 69131.

Supreme Court of Missouri, En Banc.

Oct. 13, 1987.

Rehearing Denied Nov. 17, 1987.

---

Thomas R. Bellmann, James W. Jeans, Sr., James W. Fletcher and James Bartimus, Kansas City, for appellants.

Darrell L. Havener, Daniel L. Fowler, and Thomas M. Cunningham, Kansas City, for respondents.

BLACKMAR, Judge.

This is a tragic and troubling case. On Sunday evening, March 4, 1979, police were called to an apartment building at 3821 Bell, Kansas City, because the occupant of one apartment, Charles Garrett, had appeared at the door of Ethel Santos' apartment, flourishing a rifle and making threats. The police exchanged shots with Garrett, who had returned to his apartment. The bullet from Garrett's rifle shattered the glass in a "security door" providing access to the hallway, totally blinding plaintiff William Green, a guest in the Santos apartment, who had called the police. A blast from the shotgun of officer James Denison, one of the defendants, killed Garrett and wounded plaintiff Frances Clayton, his companion, depriving her of the effective use of her right arm. Green and Clayton sued Denison, Sergeant Daniel

Dawson, and officer Roderick Divilbiss, all of the Kansas City, Missouri police department. At a trial in August of 1985 the jury returned substantial verdicts in favor of both plaintiffs on a submission of ordinary negligence, assessing a percentage of fault against each. The trial court sustained the defendants' motions for judgment notwithstanding the verdicts and entered judgment for the defendants. The court of appeals reversed, directing judgment on the verdicts. We granted transfer because of the important questions about liability of police officers for acts in the line of duty. We now affirm the judgment of the circuit court, concluding that the defendant officers are not liable on an ordinary care standard under the facts of this record.

We of course take the facts from the plaintiffs' point of view. The three defendant officers answered Green's call, arriving in separate vehicles. As they approached the apartment house Denison carried a shotgun and the other two carried their drawn service revolvers. They rang the bell and were admitted to the 7' by 12'8" hallway by Green and others from the Santos apartment. The officers asked, "where is he," and, communicating by hand signals, took positions near the apartment pointed out as Garrett's. The apartment was dark and the door slightly ajar. Divilbiss kicked the door open. Although the defendants testified that one of them had called out "police officers" before the door was kicked open, the people who remained in the hallway said that they heard no such announcement, and we shall assume that none was made. As soon as the door was kicked open, Denison saw a flash and heard a shot from within the darkened apartment. He then fired his shotgun toward the point of the flash, killing Garrett and wounding Clayton as described. The officers had made no effort to move the Santos group out of the hallway before taking up positions around Garrett's door. Only twenty to thirty seconds elapsed between the time the officers entered the hallway and the time the shots were fired.

We are mindful of the plaintiffs' assertions, both in briefing and argument, that there is evidence that the police officer fired the first shot. Officer Denison, in excerpts from his deposition read into evidence by the plaintiff, testified directly to the contrary. While the plaintiffs are not bound by this evidence if there is evidence to the contrary, they may properly be bound by evidence which they introduced and which is uncontradicted, especially as to matters on which they have an affirmative burden. Evidence that only one loud report was heard, and that more than one ejected shotgun shell casing was observed, does not provide support for a finding that Officer Denison fired the first shot. The plaintiff's uncontradicted evidence shows, furthermore, that Denison had a basis for firing in self-defense.

Dr. George Kirkham, a professor of criminology, testified as an expert witness for the plaintiffs on accepted police practices. He professed familiarity with the "policies" of the Kansas City Police Department, which he said were the same as those of other metropolitan police departments, but did not refer to any manual or published statement of policies, and none was introduced into evidence. He criticized the officers: (1) for acting too hurriedly; (2) for not getting more information from the Santos group before taking positions around the Garrett apartment; (3) for not warning the people in the hallway of their intention to enter the Garrett apartment; (4) for not clearing the Santos group from the hallway; (5) for not clearly announcing their presence to Garrett and trying to talk him into giving up his gun, before kicking the door open. The jury could have found from this evidence that the officers were negligent in the performance of their duties.

Green's verdict director reads as follows:

## INSTRUCTION NO. 8

Your verdict must be for William Green and against Defendants James Denison, Daniel Dawson and Roderick Divilbiss, if you believe:

First, that Defendants were present at 3821 Bell in response to a disturbance

call that a man with a rifle had threatened a neighbor, and

Second, that Defendants knew or in the exercise of ordinary care should have known that if they attempted to enter the Garrett apartment, that there was a reasonable likelihood of an exchange of shots, and

Third, that Plaintiff William Green was in a position of danger when Defendants attempted to enter the Garrett apartment, and

Fourth, that Defendants knew or in the exercise of ordinary care should have known of Plaintiff William Green's position of danger at that time, and

Fifth, that Defendants failed to advise Plaintiff William Green of their intent to enter the apartment and failed to allow Plaintiff William Green the time or opportunity to remove himself to a position of safety, and

Sixth, that Defendants were thereby negligent, and

Seventh, that as a direct result of such negligence Plaintiff William Green sustained damage.

The verdict director for Clayton is as follows:

Your verdict must be for Frances Clayton and against Defendants James Denison, Daniel Dawson and Roderick Divilbiss, if you believe:

First, that Defendants were present at 3821 Bell in response to a disturbance call that a man with a rifle had threatened a neighbor, and

Second, that Defendants knew or in the exercise of ordinary care should have known that if they attempted to enter the Garrett apartment, that there was a reasonable likelihood of an exchange of shots, and

Third, that in the event of such exchange of shots any persons other than Garrett in the apartment would be in a position of danger, and

Fourth, that before taking such action Defendants failed to determine if there were any such persons in a position of danger, and failed to warn of their identity and allow such persons the time or opportunity to remove themselves to a position of safety, and

Fifth, that Defendants were thereby negligent and;

Sixth, that as a direct result of such negligence Plaintiff Frances Clayton sustained damage.

These are, manifestly, submissions of ordinary negligence. The plaintiff argues vigorously that such is the proper standard, asking rhetorically whether the police are to be the ultimate judges of the reasonableness of their own conduct. The defendants argue for a higher threshold of liability, citing cases going back to *Reed v. Conway*, 20 Mo. 15 (1854), to which they trace the doctrine of official immunity discussed below.

The parties and the court of appeals have cited us to many cases, from Missouri and elsewhere, in which civil claims have been made against law enforcement officers. Extensive annotations are cited.[1] We have supplemented their research by our own efforts. Surprisingly few cases are close to this one factually. The numerous cases in which police officers have deliberately initiated the use of deadly force, as when a shooting or stabbing seems imminent, or to effect the arrest of a fleeing felon, or to prevent escape of a prisoner, are of little help. The vital issues there are whether there was a privilege to use lethal force, and whether more force was used than was reasonably necessary.[2] Also of limited value are the many cases cited by the parties which arose under 42 U.S.C. Sec. 1983, in which it is necessary to show deprivation of

---

[1] Annotation, Liability of Municipal Corporation for Shooting of Bystander by Law Enforcement Officer Attempting to Enforce Law, 76 A.L.R.3d 1176 (1977); Annotation, Personal Liability of Policeman, Sheriff, or Other Peace Officer, or Bond, for Negligently Causing Personal Injury or Death. 60 A.L.R.2d 873 (1958).

[2] *See,* e.g. *Walsh v. Oehlert,* 508 S.W.2d 222 (Mo.App.1974), McMillian, J.; *City of Gallatin ex rel. Dixon v. Murphy,* 217 S.W.2d 400 (Mo. App.1949).

federal constitutional rights.[3] Cases such as these may contribute helpful analysis, but they involve issues and considerations not present here.

This case involves claims against police officers who were directed to respond to a disturbance call and who were fired upon almost immediately after they took positions at the suspect's door. The plaintiffs argue that the police could and should have foreseen the violent encounter, and so may be held to civil liability to the persons injured on a negligence theory. Two distinct but somewhat related doctrines, firmly established in Missouri law, impose obstacles to recovery. These are the official immunity doctrine[4] and the public duty doctrine.[5] Both are discussed in *Sherrill v. Wilson*, 653 S.W.2d 661 (Mo. banc 1983), in which we held that psychiatrists at a state hospital were not liable for releasing an allegedly dangerous patient on a short pass, or for failure to return him to custody after he overstayed his leave. The doctrines are not matters of affirmative defense, but rather serve to delineate the legal duty which the defendant official owes to the plaintiff.

The official immunity doctrine holds that a public official is not civilly liable to members of the public for negligence strictly related to the performance of discretionary duties. The fear of personal liability should not hang over public officials as they make judgments affecting the public safety and welfare. There are numerous recent applications. In *Sherrill v. Wilson, supra,* for example, we suggested that a state psychiatrist might be reluctant to release a mental patient under his care for a therapeutic leave if the prospect of lawsuits loomed large. The line of least resistance would be to keep all patients in tight custody, even though this might have an adverse effect on treatment.

Plaintiffs argue that the acts of the police officers were "ministerial" rather than "discretionary," and that the doctrine of official immunity protects only those public officials who exercise discretionary authority. They cite *Rustici v. Weidemeyer*, 673 S.W.2d 762 (Mo. banc 1984) for its statement that an arrest is not a matter of discretion, but this case is not at all pertinent. It deals with the authority of a police officer to arrest a person who had given no immediate cause for concern, but for whom there was an outstanding warrant on account of unpaid parking tickets. The Court held that the officer had the burden of determining whether he could make a lawful arrest of a peaceful citizen. This case, by contrast, involves the liability of police officers who are summoned into a situation of great tension.

We reject any suggestion that only higher officials possess discretion or judgment so as to enjoy the protection of official immunity. Discretion and judgment are synonymous. It is hard to imagine a setting more demanding of judgment than one in which line officers of the police department confront a person who has recently flourished a gun. Professor Kirkham would have had the officers interview the people who called them in some detail, and said that there was no particular need for haste. Yet there might be danger in delay, because the armed man might sense the officers' presence (particularly because their walkie-talkies were turned on) and might take precipitous action. Kirkham called for the officers to announce their presence and try to talk to the person with the weapon. To proceed in this way would forfeit some of the advantages of surprise.

---

3. *Landrum v. Moats*, 576 F.2d 1320 (8th Cir. 1978); *Rymer v. Davis*, 775 F.2d 756 (6th Cir. 1985); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985), reh'g denied 779 F.2d 1129 (5th Cir.1986), *cert. denied* ⎯ U.S. ⎯, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). The plaintiffs apparently commenced suit in United States District Court under 42 U.S.C. Sec. 1983, but then dismissed the suit and filed in the court below.

4. *Kanagawa v. State*, 685 S.W.2d 831 (Mo. banc 1985); *Jackson v. Wilson*, 581 S.W.2d 39 (Mo. App.1979); *Schooler v. Arrington*, 106 Mo.App. 607, 81 S.W. 468 (1904). *Cf. Robertson v. City of Topeka*, 231 Kan. 358, 644 P.2d 458 (1982).

5. *Berger v. City of University City*, 676 S.W.2d 39 (Mo.App.1984); *Christine H. v. Derby Liquor Store*, 703 S.W.2d 87 (Mo.App.1985); *Cox v. Department of Natural Resources*, 699 S.W.2d 443 (Mo.App.1985).

An alerted and irrational defendant might fire his weapon before the officers could initiate a conversation. Kirkham stressed the personal danger to the officers. Danger is inherent in police work, but an officer's personal assumption of danger should not be the foundation for civil liability to others. The evidence shows that the police were called into a situation teeming with the necessity for quick judgment calls. A decision to wait, or to do nothing, is nonetheless a decision. The plaintiffs are asking the jury to second-guess the officers based on Professor Kirkham's post-mortem analysis of good police practice. The doctrine of official immunity was established to protect public officials from just this kind of second-guessing. This is so even though hindsight may demonstrate errors in judgment which might be branded as negligent by qualified evaluators.

■ We conclude that the basic decision by the officers to move quickly to surround the door of the Garrett apartment and to kick the door open was a discretionary or judgmental decision which was protected by the doctrine of official immunity. The officers, therefore, could not be held civilly liable for negligence in the making of this decision.

■ The public duty doctrine also fortifies our conclusion that the negligence submission was not appropriate. This doctrine holds that a public employee may not be held civilly liable for breach of a duty owed to the general public, as distinguished from a duty owed to particular individuals. Again, *Sherrill v. Wilson, supra,* furnishes an example. The responsible authorities at a mental institution were not liable for failing to recapture an inmate on pass, in a suit by a person randomly injured by the AWOL inmate. Another recent case is *Berger v. University City,* 676 S.W.2d 39 (Mo.App.1984), in which no civil liability was found on account of failure to furnish police protection, as a result of which striking firemen were able to keep replacement firemen away from a burning building. We do not have to discuss this doctrine in depth, or to decide whether it applies to misfeasance as well as to nonfeasance. It is applicable for the specific breaches of duty charged against the officers, as set out in the verdict directors as follows: (1) failure to warn Green of their purpose of entering the Garrett apartment; (2) failure to afford Green time to remove himself; (3) failure to warn persons in the Garrett apartment of their identity and purpose in order to permit them to remove themselves to a position of safety. These are essentially charges that the officers should have taken additional precautions, and, therefore, claims of nonfeasance. Perhaps the primary purpose of the public duty doctrine is to protect modestly compensated civil servants against multifarious claims. Another purpose, however, is to allow a public servant to proceed with the task at hand, without suffering inappropriate diversion by additional considerations. This concept is related to the official immunity concept, and supplements it in this case.

■ We do not disagree with the proposition that public officials may be required to exercise care to avoid injury to particular individuals, when the injury is reasonably foreseeable and is not an integral part of the officers' action in the line of discretionary duty. *Larabee v. City of Kansas City,* 697 S.W.2d 177 (Mo.App.1985) found liability against a building inspector who caused injury to adjoining property in the course of knocking down a wall at the direction of a fire fighting officer. The record showed not an exercise of discretion, but rather a violation of express directions in forcing the wall the wrong way. In *Cannada v. Moore,* 578 S.W.2d 597 (Mo. banc 1979), in which a deputy sheriff blocked a highway, neither official immunity nor public duty appears to have been argued. *State ex rel. Eli Lilly & Co. v. Gaertner,* 619 S.W.2d 761 (Mo.App.1981), advances the proposition that a physician in public employment owes the normal physician-patient duties to those he examines and treats. The ancient case of *Lampert v. Laclede Gas–Light Co.,* 14 Mo.App. 376 (1883), does not involve the duty of a public employee, but rather deals with the duty of a private agency which had a public contract. The ultimate finding was against

liability, and so the statements about circumstances under which liability could be imposed are suspect as authority. We agree that public officials may be expected to keep their wits about them, and must not assume an attitude of arrogant disregard toward the safety of members of the public. In the present case, however, the breaches of duty assigned are part and parcel of the officers' judgmental decisions. As to this conduct, no particularized duty was owed to the plaintiffs.

The plaintiffs cite *Oberkramer v. City of Ellisville*, 706 S.W.2d 440 (Mo. banc 1986), earlier opinion 650 S.W.2d 286 (Mo.App. 1983), for the proposition that police conduct which injures members of the general public is to be tested by standards of ordinary negligence. The case is not at all comparable. It was decided on the pleadings, and the ultimate holding was that no claim for relief had been stated. The plaintiff sought damages for the wrongful death of a police officer in the course of a high speed chase in which several police departments participated. The case turned on the point that there was no claim of negligence in the operation of the police vehicles. The only negligence charged was that of the pursued driver. The Court held that there was no liability on account of the judgmental decision to maintain a high speed chase. The case before us does not involve charges of negligence in the operation of a motor vehicle, and so we express no opinion about liability of officers in that situation. *Newson v. City of Kansas City*, 606 S.W.2d 487 (Mo.App.1980), indicating that the driver of a fire engine may be held for negligence unless judgment or discretion is involved, is likewise a vehicle case, and of little help here.

The plaintiffs assert that the officers violated Section 544.200, RSMo 1986, reading as follows:

To make an arrest in criminal actions, the officer may break open any outer or inner door or window of a dwelling house or other building, or any other enclosure, if after notice of his office and purpose, he be refused admittance.

There is no violation of the terms of the statute. No officer broke an outer or inner door or window. The kicking of the partially open door might be considered a technical trespass, but this minimal intrusion is not a basis for civil liability. There is no evidence that any officer entered the Garrett apartment until after the shots had been exchanged. The statute, moreover, was not designed to apply to a stressful situation, in which immediate action might be necessary to protect lives.[6]

Most of our discussion has dealt with Missouri cases. We have checked authorities elsewhere, and see no reason to depart from the doctrine of the numerous recent cases in our reports applying the official immunity and public duty doctrines. Our conclusion is consistent with *Scott v. City of New York*, 2 A.D.2d 854, 155 N.Y.S.2d 787 (1956), affirmed 9 N.Y.2d 764, 215 N.Y. S.2d 72, 174 N.E.2d 745 (1961), which holds that a police officer owes no duty to a bystander who is struck by a bullet in a gun battle between a fleeing escaped prisoner and the police, and that the city is not liable even though the officer is negligent. Also in line are the numerous cases holding that officers participating in a high speed chase are not liable to persons injured in a collision with the pursued vehicle. Annotation, Liability of Governmental Unit or its Officer for Injury or Damage from Operation of Vehicle Pursued by Police, 83 A.L. R.2d 452 (1962); *Oberkramer v. City of Ellisville, supra*. Some of the decisions imposing liability are based on special statutory provisions which we do not have.[7]

---

6. 18 U.S.C. Sec. 3109 is a similar federal statute. Holding that compliance with the provisions of the statute may be excused by exigent circumstances are: *United States v. Kane*, 637 F.2d 974 (3d Cir.1981); *United States v. Kulcsar*, 586 F.2d 1283 (8th Cir.1978); *United States v. Scott*, 520 F.2d 697 (9th Cir.1975). *See also People v. Ro-*

*sales*, 68 Cal.2d 299, 66 Cal.Rptr. 1, 437 P.2d 489 (1968), Traynor, Ch.J.

7. *See*, e.g. *Wilson v. Nepstad*, 282 N.W.2d 664 (Iowa 1979); *DeWald v. State*, 719 P.2d 643 (Wyo.1986); *Schear v. Board of County Commissioners*, 101 N.M. 671, 687 P.2d 728 (N.M.1984).

We believe that our common law rules appropriately balance the public interest and the rights of individuals, and see no reason for substantial modification of the doctrines.

*Schooler v. Arrington,* 106 Mo.App. 607, 81 S.W. 468 (1904), holds that a public officer may be held liable for persons injured in the performance of discretionary duties only if "willful wrong, malice or corruption" is shown. We do not now have to decide whether this is the proper standard or whether some variation of it is appropriate. The evidence in this record, taken most strongly from the plaintiffs' point of view, provides no basis or finding of any degree of fault beyond ordinary negligence. No other standard was submitted to the jury, and no other submission has been urged on appeal from the judgment for the defendants. Because the officers were protected in the exercise of their judgment by the doctrine of official immunity, and because no particularized duty to the plaintiffs appears, the showing of negligence to support recovery is legally insufficient. The trial judge properly sustained the defendants' post-trial motions for judgment notwithstanding the verdict.

The judgment of the circuit court is affirmed.

All concur.