Albert F. DEUSER, and Tina Marie Sellers, by and through her Guardian, Joann Sellers, Plaintiffs/Appellants,

v.

Lawrence J. KING, Defendant/Respondent.

No. ED 76247.

Missouri Court of Appeals, Eastern District, Division One.

May 16, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 5, 2000.

Application for Transfer Denied Aug. 29, 2000.

Robert H. Pedroli, Jr., Eric A. Rutten-cutter, Clayton, for appellants.

Thomas J. Ray, Edward J. Hanlon, Michael Stelzer, St. Louis, for respondent.

## *OPINION*

JAMES R. DOWD, Judge.

Plaintiffs, Albert F. Deuser and Tina Marie Sellers, by and through her Guardian, Joann Sellers, appeal from the judgment of the trial court granting summary judgment in favor of defendant Lawrence J. King. We affirm the trial court's grant of defendant's Motion for Summary Judgment.

## Facts

Plaintiff Albert F. Deuser is the father of Larry P. Deuser (hereinafter "Deuser"), deceased. Plaintiff Tina Marie Sellers is Larry Deuser's daughter. Defendant Lawrence J. King (hereinafter "King") is a police officer with the St. Louis Metropolitan Police Department.

During the V.P. Fair on July 4, 1986, National Park Rangers David Vecera and Edward Bridges (hereinafter "Rangers") stopped Deuser for randomly grabbing women's buttocks. The Rangers warned Deuser to cease his offensive behavior and allowed him to continue his way through the crowd. Unaffected by the Rangers' warning, Deuser walked some 150 feet and proceeded to urinate on a main stage located on the fairgrounds, whereupon the Rangers arrested Deuser and escorted him to the base station.

At the base station, the Rangers met King who was working prisoner conveyance for the City of St. Louis. After discussing the situation, the Rangers and King agreed to remove Deuser from the fairgrounds and release him a sufficient distance from the Fair so that Deuser could not return and cause more trouble. King and the Rangers escorted Deuser several blocks away from the fairgrounds and released him at a parking lot near the Federal Building located across the street from the police station. King instructed Deuser to keep off the fairgrounds or face arrest. Deuser responded to King that he understood the instruction and left the parking lot.

According to § 7(1)(a)-(c) of Order 81–S–1 of the St. Louis Metropolitan Police Department, "when an officer observes or receives an assignment for an intoxicated person," the officer has the choice to take the subject to either: (a) the District station to call for a ride, (b) the detoxification center, or (c) the hospital if the detoxification center is full.

King, an experienced police officer, testified that he possibly smelled alcohol on Deuser's breath, but that Deuser never showed any other signs of intoxication. Approximately 1.5 miles from the release point, and 45 minutes later that evening, Deuser was struck and killed by a vehicle travelling westbound on Interstate 44. The medical examiner later measured Deuser's blood alcohol content to be .214, and thereby calculated Deuser's blood alcohol content while in King's custody to have been between .230 and .232.

This wrongful death claim was originally filed in Federal District Court with a separate but related count under the Federal Tort Claims Act. The District Court dismissed the Federal Tort Claims Act count for lack of subject matter jurisdiction. In that case, the Federal Park Rangers and the United States were sued for essentially the same conduct as Officer King. The Eighth Circuit held that the Rangers and the government were protected by sovereign immunity because the Rangers' actions were discretionary. *Deuser v. Vecera,* 139 F.3d 1190, 1195 (8th Cir.1998).[1] The District Court also declined to exercise supplemental jurisdiction over the state wrongful death claim, dismissing it without prejudice. Subsequently, plaintiffs filed their wrongful death claim against Officer King in State court alleging King negligently released Deuser while Deuser was in an intoxicated condition.

Plaintiffs filed this appeal on August 27, 1999, seeking reversal of the trial court's grant of King's Motion for Summary Judgment. The question presented to this court is whether the official immunity of

---

1. The United States Congress has waived sovereign immunity when the United States could be liable for injury or loss caused by the negligence of an employee of the United States. 28 U.S.C.A. Section 1346(b)(1) (Supp. 1997). Federal Courts can exercise subject matter jurisdiction over those cases. *Id.*

However, because the termination of the arrest was discretionary, it fit within the statutory exception of 28 U.S.C. Section 2680(a) (1994). Since there was no waiver of sovereign immunity, the Eighth Circuit held that there was no federal subject matter jurisdiction.

police officers granted by Missouri law or the public duty doctrine bars the Plaintiffs' claim against Officer King. We affirm the trial court's ruling and hold that Officer King is protected from civil liability under his official immunity and the public duty doctrine.

## Standard of Review

Our review is essentially de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The propriety of summary judgment is purely an issue of law. *Id.* As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Id.* When considering an appeal from summary judgment, this Court will review the record in the light most favorable to the party against whom judgment was entered. *Id.* We accord the non-movant the benefit of all reasonable inferences from the record. *Id.*

## Analysis

Plaintiffs argue that the trial court erred in sustaining King's motion for summary judgment because: (1) King's release of Deuser was a ministerial function prescribed by § 7 of Order 81–S–1 rather than a discretionary function, and thus King is not afforded protection by official immunity; and (2) pursuant to § 7, King owed a specific duty to Deuser rather than the general public, and thus King is not protected by the public duty doctrine.

According to the official immunity doctrine, public officials, including police officers, are not personally liable for the performance of negligent acts strictly related to discretionary functions. *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987). A discretionary act requires "the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or a course pursued." *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984). In contrast, a ministerial function is of a clerical nature and is performed in a prescribed manner according to legal mandate without regard to the public official's personal judgment or opinion. *Id.*

Common sense dictates that, absent blood analysis, "intoxication" is a question of degree. Before King was required to choose among the mandated options of § 7, he had to determine Deuser's degree of intoxication, if any. In that respect, King had to exercise reason and judgment. To employ hindsight to question that judgment would destroy the protections granted by the official immunity doctrine. Using his vested discretion as a police officer, King determined that transporting Deuser away from the fair was the proper course of action based on an assessment of Deuser's condition. Therefore, pursuant to *Green*, King's release of Deuser was a discretionary action and he is officially immune from the wrongful death claim brought by Appellants.

Appellants also claim that King is not entitled to protection from liability under the public duty doctrine. Public officials, including police officers, may not be held civilly liable for breach of a duty owed to the general public rather than particularized individuals. *Jungerman v. City of Raytown*, 925 S.W.2d 202, 205 (Mo. banc 1996). A particular individual is owed a specific duty when that individual has a "special, direct, and distinctive interest" in an official's performance of a duty. *Id.* Missouri courts have broadly construed the meaning of public duties involving police officers. *Cooper v. Planthold*, 857 S.W.2d 477, 479 (Mo.App.1993).

Law enforcement and the peaceful maintenance of a social gathering are

duties owed the general public. *Schutte v. Sitton,* 729 S.W.2d 208, 211 (Mo.App.1987). Specifically, Missouri courts have held that the public duty doctrine bars a suit where an officer did not prevent an intoxicated individual from driving. *Jackson v. City of Wentzville,* 844 S.W.2d 585, 588–89 (Mo. App.1993); *Schutte,* 729 S.W.2d at 210. In performance of his duties, and as a function of his discretion, King chose to transport Deuser to a spot away from the fair so that he would not further disrupt the event. King's only specific duty to Deuser was to safely transport him to the release point. By successfully performing this duty, King satisfied Deuser's special interest in being transported safely. As the Missouri Supreme Court noted in *Green v. Denison,* 738 S.W.2d at 867, "the breaches of duty assigned are part and parcel of the officer's judgmental decisions."

The trial court's order granting summary judgment is affirmed.

GARY M. GAERTNER, P.J., concurs.

PAUL J. SIMON, J., concurs.